UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

John Isotalo and Dan Tomica,

    Plaintiffs,

v.

Kelly Services, Inc.,

    Defendant.

                                   /

Case No. 12-11253

Honorable Nancy G. Edmunds

## **OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [15]**

Before the Court is Defendant Kelly Services, Inc.'s motion for partial summary judgment on Plaintiff John Isotalo's federal and state age discrimination claims.[1] (Dkt. 15.) Defendant moves for summary judgment on Plaintiff's claim arguing that Plaintiff's representations to the Social Security Administration that he was disabled and unable to work, and thereafter received and continues to receive SSA benefits, leaves Plaintiff unable to prove, or even allege, that he was qualified for his job when he was terminated, a requirement for proving an age discrimination case.

Because the Court agrees with Defendant and finds that Plaintiff is estopped from asserting that he was qualified for his job on the day he was terminated, the Court GRANTS Defendant's motion for partial summary judgment.

---

[1] Plaintiff alleges violations of the federal Age Discrimination in Employment Act, 29 U.S.C. § 622, et seq. and the Michigan's Civil Rights Act, which does not allow an employer to "[f]ail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment because of . . . age." Mich. Comp. Laws § 37.2202(1)(a).

**I.     Facts**[2]

On March 17, 2011, Defendant terminated Plaintiff from his corporate security guard position. (Def.'s Mot. at 5.) On March 17 and 18, Plaintiff sought treatment from a cardiologist. (*Id.*, Def.'s Mot., Ex. A.) The treatment test results showed occasional irregular heart beats. (*Id.*) After the initial testing, Plaintiff had surgery performed to replace his pacemaker. (*Id.*)

On April 19, 2011, Plaintiff filed a claim for Social Security Disability (SSDI) benefits. (Def.'s Mot., Ex. B.) Plaintiff alleged an onset date of March 17, 2011. (*Id.*) Plaintiff alleged that he was disabled because of his heart failure and lower back problems. (*Id.*) Plaintiff added that he stopped worked because of his "condition" and "other reasons." (*Id.*) Plaintiff noted that he lost his job because of a "departmental cut," but also represented that he believed his conditions became so severe as to prevent him from working on March 17, 2011. (*Id.*)

On May 6, 2011, the SSA interviewed Plaintiff. (Def.'s Mot., Ex. C.) In this interview, Plaintiff again asserted that he became unable to work on March 17, 2011. (*Id.*)

On May 28, 2011, Plaintiff filled out an SSA Function Report. (Def.'s Mot., Ex. D.) In this report, Plaintiff indicated that he could not sit for more than 30 minutes without his left leg and lower back hurting. (*Id.*) He stated he could not stand or walk for any distance or period of time without having to sit down to take the pressure off of his back. (*Id.*) Plaintiff also indicated that his injuries affected the following: lifting; squatting; bending; standing; walking; sitting; kneeling; and stair climbing. (*Id.*)

---

[2]Plaintiff does not dispute Defendant's fact presentation.

On August 24, 2011, the SSA denied Plaintiff's claim for benefits. (Def.'s Mot., Ex. F.) On October 19, 2011, Plaintiff filed an appeal and a request for hearing. (Def.'s Mot., Ex. G.) In this appeal, he stated that he disagreed with the initial SSA denial and requested a hearing because he was "disabled and unable to perform any substantial gainful activity given [his] age[,] education[,] and work experience." (*Id.*)

On August 29, 2012, the ALJ reversed the denial of benefits. (Def.'s Mot., Ex. H.) The ALJ found that Plaintiff was disabled as of the date alleged, March 17, 2011. (*Id.*) The ALJ also found that Plaintiff could not perform any of his past relevant work. (*Id.*)

Plaintiff received Social Security Disability benefits retroactively from March 17, 2011. (Def.'s Mot., Ex. I.) Plaintiff currently receives $1,900.00 in benefits per month from the SSA. (*Id.*)

In his deposition, Plaintiff stated that he did not "entirely" agree with the SSA's determination that he was "unable to engage in any gainful substantial activity because of medically determinable physical or mental impairments or a combination of both." (Def.'s Mot., Ex. I.) Plaintiff added that he never told the SSA that he disagreed with its determination. (*Id.*) Plaintiff also stated that "[i]f he was still at work[,] [he] could still perform that job duty if it [had not] changed entirely." (Def.'s Mot., Ex. I.)

## II. Summary judgment standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party may meet that burden "by 'showing' – that is, pointing out to the district court -- that there is an absence of evidence to support the

3

nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Revised Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The revised Rule also provides the consequences of failing to properly support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue of

material fact, drawing "all justifiable inferences in the light most favorable to the non-moving party." *Hager v. Pike Cnty. Bd. Of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002).

## III. Analysis

The issue this case presents is whether Plaintiff can withstand summary judgment on his age discrimination claims, which require him to prove that he was qualified for his job when he was terminated, given his prior SSDI claim, in which he stated he was completely unable to work and therefore entitled to SSDI.

The ADEA prohibits an employer from discharging an individual "because of such individual's age." 29 U.S.C. § 623(a)(1). Michigan's Civil Rights Act does not allow an employer to "[f]ail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment because of . . . age." Mich. Comp. Laws § 37.2202(1)(a). Age discrimination claims brought under the Michigan statute are analyzed under the same standards as federal claims brought under the ADEA. *Geiger v. Tower Auto.*, 579 F.3d 614, 626 (6th Cir. 2009). *See also Bondurant v. Air Line Pilots Ass'n, Int'l*, 679 F.3d 386, 394 (6th Cir. 2012).

A plaintiff bears the burden to show that "age was the 'but-for' cause of the employer's adverse action." *Blizzard v. Marion Technical Coll.*, 698 F.3d 275, 283 (6th Cir. 2012) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009)). A plaintiff can establish an ADEA violation by either direct or circumstantial evidence. *Id.* (citation omitted).

To establish a prima facie case of age discrimination through circumstantial evidence, a plaintiff must show: (1) membership in a protected group; (2) qualification for the job in

question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination. *Blizzard*, 698 F.3d at 283 (quotation marks and citation omitted).

At the prima facie stage, "a court should focus on a plaintiff's *objective* qualifications to determine whether he or she is qualified for the relevant job." *Wexler v. White's Fine Furniture, Inc.*, 317 F.2d 564, 575 (6th Cir. 2003) (citing cases for the proposition that courts are to treat subjective considerations and statements with caution when determining whether a plaintiff can meet his burden at the qualification stage.). The Sixth Circuit stated, "[t]he prima facie burden of showing that a plaintiff is qualified can therefore be met by presenting credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria for employment in the relevant field." *Id.* at 575-76. The Sixth Circuit continued, "[a]lthough the specific qualifications will vary depending on the job in question, the inquiry should focus on criteria such as the plaintiff's education, experience in the relevant industry, and demonstrated possession of the required general skills." *Id.* at 576.

Here, Defendant alleges that Plaintiff's claim must fail because he is not qualified for the job in question, given his representations in his request for Social Security Disability benefits. The SSA "provides money benefits to every insured individual who 'is under a disability.'" *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 801 (1999) (quoting 42 U.S.C. § 423(a)(1)). The SSA defines "disability" as an

> inability to engage in any substantial gainful activity by reason of any . . . physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A).

When a plaintiff has previously filed for and received SSDI benefits based upon his sworn statement that he is unable to work, then subsequently files a suit in which he facially takes a position that appears to contradict the position he took in his SSDI application, the plaintiff bears the burden, to survive summary judgment, to state a reasonable explanation of how the two seemingly contradictory positions can coexist. If the plaintiff can make such an offer, he can survive summary judgment on that issue.

A court's task, though, is to first determine whether the plaintiff's prior position truly conflicts with his later position.

This analytical framework stems from the Supreme Court's analysis in *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795 (1999) and that opinion's progeny and alters a court's traditional judicial estoppel framework. *See Detz v. Greiner Industries, Inc.*, 346 F.3d 109, 115 (3d Cir. 2003) (stating that courts should apply the Supreme Court's *Cleveland*'s framework in the "context of a motion for summary judgment where the initial assertions were accepted by a court or agency.").

In *Cleveland*, the Court addressed whether a Social Security Disability benefits applicant carried a "special presumption" of disability that would "significantly inhibit an SSDI recipient from simultaneously pursuing an action for disability discrimination under the Americans with Disabilities Act," in which the applicant/litigant claimed that "with . . . reasonable accommodation" she could "perform the essential functions" of her job. 526 U.S. at 797 (citing 42 U.S.C. § 12111(8)).

The Court held that, while an SSDI benefits applicant must allege disability, the "pursuit, and receipt, of SSDI benefits does not automatically estop the recipient from pursuing an ADA claim." *Cleveland*, 526 U.S. at 797. Nor does the pursuit create "a strong presumption against the recipient's success under the ADA." *Id.* at 798. Despite declining to adopt a strong presumption, the Court held that, when an SSA applicant has alleged disability and receives benefits that facially appear inconsistent with an ADA claim, he "must explain why that SSDI contention is consistent with [his] ADA claim that [he] could 'perform the essential functions' of [his] previous job, at least with 'reasonable accommodation.'" *Id.*

The Court explained that its holding was because "there are too many situations in which an SSDI claim and an ADA claim can comfortably exist side by side." *Cleveland*, 526 U.S. at 802-03. The Court held so, saying that the ADA defined "qualified individual" to include a disabled person "who . . . can perform the essential functions" of his job "*with reasonable accommodation.*" *Id.* at 803 (emphasis in original). The Court focused its analysis on the "reasonable accommodation" language of the ADA and how that differed from the SSA. *Id.* The Court showed that the SSA does not take the possibility of "reasonable accommodation" into account nor does an SSA applicant need to "refer to the possibility of reasonable accommodation when she applies for SSDI." *Id.* The Court reasoned, "[t]he result is that an ADA suit claiming that the plaintiff can perform her job *with* reasonable accommodation may well prove consistent with an SSDI claim that the plaintiff could not perform her own job (or other jobs) *without* it." *Id.*

While allowing a plaintiff to pursue SSDI and ADA claims concurrently, the Court reasoned that a plaintiff's inconsistent positions in an SSA and ADA claim could not go unchecked. *Cleveland*, 526 U.S. at 805-06. The Court held that the ADA plaintiff would have to bear the burden of offering an explanation for the "apparent contradiction that arises out of the earlier SSDI total disability claim." *Id.* at 806.

While not perfectly analogous, *Cleveland* is instructive and provides the framework for analyzing whether a plaintiff is judicially estopped from asserting an ADEA claim when he has averred total disability in a previous SSDI application. Neither party has pointed to controlling law from the Sixth Circuit, nor has the Court independently found that the Sixth Circuit has addressed this precise issue.[3] But Defendant offers several cases that have addressed the precise issue and have found, following *Cleveland*'s framework, that a plaintiff may be estopped from asserting an inconsistent claim in a post-SSDI ADEA claim. *See Detz v. Greiner Indus., Inc.*, 346 F.3d 109 (3d Cir. 2003) (noting that *Cleveland*'s framework applies to ADEA claims.). *See also McClaren v. Morrison Mgmt. Specialists, Inc.*, 420 F.3d 457, 463-64 (5th Cir. 2005) (holding that *Cleveland*'s analysis applied to a state age discrimination claim and discussing *Detz* at length and with approval.). *And see Hart v. Ridge Tool Co.*, 544 F.Supp.2d 634 (N.D.Ohio 2008) (adopting the magistrate

---

[3]*But see Verhoff v. Time Warner Cable, Inc.*, 299 F.App'x 488 (6th Cir. 2008) (holding that *Cleveland*'s logic applied to FMLA claims and that the receipt of SSDI benefits and those SSA claims did not estop the plaintiff from succeeding on his FMLA claim.) (And noting *Detz v. Greiner Industries, Inc.*, 346 F.3d 109 (3d Cir. 2003) and its extending *Cleveland* to conflicts with SSDI and ADEA claims.) *Verhoff* stands for the proposition that the Sixth Circuit would apply the same rationale as applied in *Detz* and *McClaren* to ADEA claims.

9

judge's report and recommendation, but not expressly adopting the magistrate judge's discussion of the interaction between *Cleveland* and the ADEA.).

The Court agrees with *Detz* and *McClaren*. The Court finds *Detz* particularly instructive and illustrative. In *Detz*, the plaintiff lost his job with his employer-defendant and thereafter filed for SSDI benefits. 346 F.3d at 111. Four years later, the plaintiff brought a suit against his former employer alleging that it wrongfully terminated him based on his age in violation of the ADEA. *Id*. As a part of his prima facie case, the plaintiff asserted that he was, "at the time of his termination," "qualified for the position he held" and "was capable of continuing to perform it." *Id*.

After the plaintiff was laid off, he filed a Disability Report and Application for Disability Insurance Benefits with the SSA. *Detz*, 346 F.2d at 112. In that report, the plaintiff stated that his disabling condition was the loss of the use of his left hand and arm, high blood pressure, lung problems, and depression. *Id*. He indicated that the onset of the arms problems were the date that he was laid off from his job. *Id*. He also indicated that his condition prevented him from working because he could not lift twenty pounds and that he dropped things easily with his left hand. *Id*. Throughout the SSDI application process, the plaintiff alleged that he was unable to work because of his disabling condition and that he was "still disabled" at the time of his application. *Id*. The Third Circuit noted that the SSA initially denied the plaintiff's claim and refused his request for reconsideration. *Id*. at 112-13. The plaintiff then requested a hearing from an administrative law judge and he alleged a third time that he was "disabled and unable to work." *Id*. at 113. The plaintiff thereafter

was awarded SSDI benefits, retroactively beginning the day of his application, the day he was laid off from his job. *Id.*

The plaintiff later filed an ADEA claim against the defendant. *Detz*, 346 F.3d at 114. In his complaint, the plaintiff alleged that he had performed his former job for nine years and was fully qualified for the position. *Id.* At the district court, the defendant raised judicial estoppel as a defense to the plaintiff's ADEA claim. *Id.* The defendant argued that the plaintiff was judicially estopped from claiming that he was qualified for his job, a required element of an ADEA prima facie case. *Id.* The district court held that judicial estoppel was appropriate because, following *Cleveland*, the plaintiff did not offer a sufficient explanation between the position he took in his SSDI claim and his ADEA claim. *Id.* at 114-15.

On appeal, the Third Circuit affirmed. The Third Circuit reviewed the *Cleveland* opinion and stated that its "analysis is not limited in its application to cases involving [only SSDI and ADA claims.]" (*Id.* 116-17.) The court stated that the assertion that a plaintiff was a "qualified individual" for the ADA is similar to the "declaration that one is a 'qualified individual' under the ADEA." *Id.* at 117. The court stated that both require "context-related legal conclusion[s]." *Id.* The court held that, if a plaintiff's prima facie showing under the ADEA conflicts with earlier statement made to the SSA, a court should apply the analysis and reasoning of *Cleveland. Id.*

The court first addressed whether the plaintiff's SSDI assertions conflicted with his assertions in his ADEA claim. *Detz*, 346 F.3d at 118-19. The Third Circuit held that the plaintiff's position were "truly inconsistent with one another." *Id.* The court reasoned,

11

> [i]n order to be "disabled" for SSDI purposes, an applicant must be incapable of performing his "past relevant work," and he must be found unable to perform any other job existing in significant numbers in the nation's economy. On the other hand, in order to establish a prima facie case under the ADEA, a plaintiff must show, among other things, that he was "qualified" for the position he held prior to his termination. To be "qualified" a plaintiff must have been "performing his job at a level that met his employer's legitimate expectations" at the time of his discharge.

*Id.* at 119 (all citations omitted).

The court held, "considering [the above] . . . that a person who makes assertions in support of both claims would often appear to be making facially incompatible assertions, as the second seems to be an 'about face' from, or 'disavowal' of, the first." *Detz*, 346 F.3d at 119. The court stated that the plaintiff, on his SSDI application, made the blanket statement that he was unable to work. *Id.* The court noted that the plaintiff "unambiguously indicated that his disability prevented him from working at all." *Id.* And the court pointed out that the SSA initially denied the plaintiff's application, but that the plaintiff appealed the initial denial and supported his claims with "medical reports and his own sworn statements." *Id.* The court held that the plaintiff's positions were "patently inconsistent." *Id.* at 120. The court then addressed whether the plaintiff adequately reconciled the inconsistency. *Id.* The court found that he did not, for he ignored his repeated statements to the SSA regarding his inability to work. *Id.* The court further noted that the plaintiff had not informed the SSA that he could perform his past relevant work, which the SSA required him to do, and which would disqualify him from receiving SSDI benefits. *Id.* (citations omitted). The court held therefore that no reasonable juror could accept the plaintiff's explanation of inconsistency. *Id.* The court concluded that the plaintiff "succeeded in convincing the agency to award

benefits based on his first assertion, and his inability to adequately reconcile the patently inconsistent positions dooms his ability to pursue his ADEA claim." *Id.* at 121.

Following *Cleveland* and *Detz*'s framework, the Court must first determine whether Plaintiff has taken inconsistent positions in his SSDI application and now in his ADEA claim. If the Court finds an inconsistency, then the Court must decide if Plaintiff has presented an explanation for the inconsistent positions that a reasonable juror could accept as true.

Here, in his SSDI application, Plaintiff alleged that he stopped working because of his "condition," his heart failure and lower back problems, and "other reasons." (Def.'s Mot., Ex. B.) And while he noted that he lost his job because of a departmental cuts, he also represented that he believed his condition became so severe that he was unable to work starting on the day he was terminated from his job, March 17, 2011. (*Id.*) On May 6, 2011, during an interview with the SSA, Plaintiff again asserted that he was unable to work, starting on March 17, 2011. (Def.'s Mot., Ex. C.) On May 28, 2011, Plaintiff filled out his SSA Function Report, in which he indicated he had problems with his leg and back and that his injuries negatively affected various abilities. (Def.'s Mot., Ex. D.) In August, 2011, the SSA denied Plaintiff's SSDI claim. (Def.'s Mot., Ex. F.) Plaintiff appealed, and stated that he disagreed with the initial SSA denial and requested a hearing because he was "disabled and unable to perform any substantial gainful activity given [his] age, education[,] and work experience. (Def.'s Mot. Ex. G.) The ALJ thereafter reversed the denial and explicitly found that Plaintiff could not perform any of his past relevant work. (Def.'s Mot., Ex. H.)

Plaintiff, in his complaint, does not expressly allege that he was qualified for his position. (Dkt. 1, Compl.) The Court notes, though, that Plaintiff's allegations fall in line

13

with a circumstantial evidence ADEA claim. That claim requires him to allege that he was qualified for his job at the time of his termination. Given Plaintiff's assertions that Defendant terminated him in violation of the ADEA and Michigan law, the Court finds that Plaintiff implicitly alleges, in his complaint, that he was qualified for his position when Defendant terminated him.

The Court finds that Plaintiff has offered inconsistent positions in his SSDI claim and his ADEA claim. He alleged in his SSDI claim, multiple times, that he was unable to work due to his condition. He now alleges that he was qualified for his position. These two claims are at odds with each other.

Further support of this implicit assertion exists in Plaintiff's response. (Dkt. 18, Pl.'s Resp.) In his response, Plaintiff attempts to put forth a reasonable explanation for the inconsistent positions that a reasonable juror could accept as true.

Plaintiff points to *Kiely v. Heartland Rehabilitation Services*, 359 F.3d 386 (6th Cir. 2004) to support his argument that his statement that "disabled" and "unable to work" in his application does not estop him from asserting an ADEA claim. (Pl.'s Resp. at 3-4.) *Kiely* is distinguishable from Plaintiff's case. In *Kiely,* the Sixth Circuit addressed a plaintiff's Michigan Persons with Disabilities Civil Rights Act, Mich. Comp. Laws. §§ 37.1101 et seq., claim in light of the plaintiff's prior pursuit and receipt of SSDI benefits for his degenerative eye disease. 359 F.3d at 388-89. The Sixth Circuit ultimately held that the plaintiff could pursue his disability discrimination claim and that the plaintiff provided an adequate explanation of the "seeming inconsistency" between the plaintiff's "disabled" and "unable to work" statements in his SSDI claim and his discrimination claim. *Id.* at 387. The court

pointed out that the plaintiff applied for SSDI on the basis of his legal blindness–"a listed impairment–and not on the basis of an inability to work." *Id.* at 390. The court noted that a reasonable juror could believe plaintiff's explanation was not inconsistent "with his claim that he could perform the duties of his job." *Id.* The Sixth Circuit stated that "such statements [as "disabled" and "unable to work"] are "open to interpretation:"

> In determining precisely what the plaintiff "admitted" in the application, one must consider the context in which the statements were made. Portions of the [SSDI] application and other forms require the applicant merely to check off boxes without comment, or require the applicant to fill in blanks with little room given for elaboration. In short, the employee may not have a fair opportunity to accurately explain the details of the employee's medical condition and his ability or inability to work for purposes of [disability discrimination laws.]

*Id.* (citations and quotations marks removed). The court discussed that a reasonable juror could "easily find" that the plaintiff's claim for SSDI was based upon his blindness, not any inability to work. *Id.* The court pointed out that the plaintiff had applied and received benefits in the past. *Id.* The court further noted that the plaintiff testified under oath that he had not intended his SSDI claim to allege that he was totally disabled. *Id.*

Plaintiff states that he can request SSDI benefits, "stating that he is 'disabled' for a purpose under the Social Security Act, without disavowing that he is unable to work for Defendant[.]" (Pl.'s Resp. at 4.) Plaintiff also states that he "never averred that he was unable to do any of the essential functions of his position with Defendant or that he was unqualified for work, [he argued] just that some of the activities which were necessary to perform his work duties were *affected* by his ailments." (*Id.* at 5.) (emphasis in response.) Plaintiff argues that the representations on his Function Report were consistent with his

15

ability to still perform his position with Defendant. (*Id.*) Plaintiff further argues, "[t]hat the SSA found him disabled is not determinative as to whether the was qualified for his job with Defendant as of March 17, 2011. (*Id.*)

Plaintiff maintains that a reasonable juror could "easily" accept Plaintiff's explanation for the inconsistency in his SSDI claim and his ADEA claims. (Pl.'s Resp. at 7.)

The Court cannot agree with Plaintiff's suggestion and finds *Kiely* inapplicable. Here, Plaintiff asserted, multiple times, that he was unable to work. In his SSA appeal, he specifically stated that he was "disabled and unable to perform any substantial gainful activity give [his] age, education[,], and work experience. Plaintiff represented that he was disabled because of his inability to work. He did not ever allege that he was able to perform any of his prior work. He consistently alleged that he was unable to perform any substantial gainful activity. The Court finds, then, that he is bound by this representation.

Plaintiff's appeal to *Kiely* is not persuasive. There, the plaintiff alleged he was blind, and blindness is its own listing under the Social Security Regulations. As the Sixth Circuit found, receiving disability benefits for blindness was compatible with an allegation of an ADA disability violation, for the plaintiff never alleged that he was unable to work. Here, Plaintiff represented repeatedly that he was unable to work, as of the date of his termination.

Because Plaintiff is estopped from asserting that he was qualified for his position, he cannot establish that a prima facie case of age discrimination. His age discrimination claims therefore fail.

**IV. Conclusion**

For the above-stated reasons, the Court GRANTS Defendant's motion for partial summary judgment and dismisses Plaintiff Isotalo from the case.

So ordered.

> s/Nancy G. Edmunds
> Nancy G. Edmunds
> United States District Judge

Dated: May 14, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 14, 2013, by electronic and/or ordinary mail.

> s/Johnetta M. Curry-Williams
> Case Manager
> Acting in the Absence of Carol Hemeyer